153 T.C. No. 4

UNITED STATES TAX COURT

NORTHERN CALIFORNIA SMALL BUSINESS ASSISTANTS INC., Petitioner
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26889-16.                    Filed October 23, 2019.

P is a California corporation that operates a medical marijuana dispensary legally under California law. R argues that P is subject to the limitations of I.R.C. sec. 280E, which disallows all deductions for a business that consists of trafficking in a controlled substance within the meaning of Schedule I or II of the Controlled Substances Act. P argues that I.R.C. sec. 280E imposes a gross receipts tax as a penalty in violation of U.S. Const. amend. VIII. Further, P argues, even if I.R.C. sec. 280E is constitutional, it only bars ordinary and necessary business deductions under I.R.C. sec. 162 and does not apply to other distinct sections of the I.R.C. Finally, P argues that it is not subject to I.R.C. sec. 280E because its business, legally operated under California law, does not consist of "trafficking" in a controlled substance.

Held: I.R.C. sec. 280E is not a penalty provision and therefore does not violate the prohibition on excessive fines in U.S. Const. amend. VIII.

**Held, further,** I.R.C. sec. 280E is not limited to deductions claimed under I.R.C. sec. 162 but applies to bar all deductions claimed by P.

**Held, further,** P has provided no compelling argument to overrule our precedent holding that I.R.C. sec. 280E applies to businesses operating legally under State law, notwithstanding its use of the word "trafficking".

Robin Lesley Klomparens, Douglas L. Youmans, Christian A. Speck, and Matthew D. Carlson, for petitioner.

Patsy A. Clarke and Melissa D. Lang, for respondent.

OPINION

GOEKE, Judge: This case is before the Court on petitioner's motion for partial summary judgment filed pursuant to Rule 121,[1] to which respondent objects. Respondent determined a deficiency in petitioner's 2012 income tax of $1,264,212 and an accuracy-related penalty under section 6662(a) of $252,842.40. Petitioner argues that section 280E--which bars deductions for a business that

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

traffics in a controlled substance--as applied in this case is invalid. For the reasons stated herein, we will deny petitioner's motion.

Background

The relevant facts are not in dispute. Petitioner is a California corporation solely owned by Dona Ruth Frank. Petitioner and Ms. Frank jointly own additional California entities.

On September 20, 2016, respondent issued a notice of deficiency to petitioner for its 2012 tax year determining adjustments related to income and expenses from passthrough entities.[2] On December 16, 2016, petitioner timely filed a petition with this Court. Respondent's notice of deficiency asserts in part:

> You operated a medical marijuana dispensary. Thus, it is determined that your business consists of trafficking in marijuana, a controlled substance within the meaning of schedule I or II of the controlled substance [sic] Act. Accordingly, you are subject to the limitations of IRC 280E, which disallows all deductions or credits paid or incurred during the taxable year in carrying on a trade or business that consists or [sic] trafficking in controlled substance [sic].

Petitioner does not dispute that its business consists of operating a medical marijuana dispensary; however, petitioner contends that its operations are legal under California State law. On July 12, 2018, petitioner filed its motion for partial

---

[2]Respondent further determined deficiencies related to petitioner's cancellation of debt income, prior year passive activity losses, and constructive dividends. Those determinations are not relevant for the present motion.

summary judgment pending before the Court in which it alleges that section 280E: (1) imposes a gross receipts tax as a penalty in violation of the Eighth Amendment to the Constitution; (2) eliminates only ordinary and necessary business deductions under section 162 and does not apply to other distinct sections of the Code; and (3) does not apply to marijuana businesses legally operated under State law. We reject each of petitioner's arguments and will deny its motion for partial summary judgment.

Discussion

I.    Summary Judgment

Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Summary judgment may be granted only if it is demonstrated that there is no genuine dispute as to any material fact and a decision can be rendered as a matter of law. See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). A partial adjudication may be made which does not dispose of all issues in the case. Rule 121(b).

When considering a motion for summary judgment, we view all facts and inferences in the light most favorable to the nonmoving party. Naftel v.

<u>Commissioner</u>, 85 T.C. 527, 529 (1985). Therefore, we will view respondent's allegations as true and limit our analysis to the legal dispute.

II.     <u>Section 280E</u>

Section 280E was enacted in response to a decision by this Court and provides:[3]

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

Section 280E applies only to deductions attributable to a taxpayer's drug-related trade or business and does not generally disallow deductions attributable to a taxpayer's non-drug-related business. <u>Californians Helping to Alleviate Med. Problems, Inc. v. Commissioner</u> (<u>CHAMP</u>), 128 T.C. 173, 182 (2007). Although petitioner references gross receipts, section 280E is a tax on gross income. Despite efforts by several States to legalize marijuana use to varying degrees, it remains a Schedule I controlled substance within the meaning of the Controlled

---

[3]Sec. 280E was enacted in response to <u>Edmondson v. Commissioner</u>, T.C. Memo. 1981-623, in which we allowed certain deductions incurred in connection with an illegal drug trade. <u>See</u> S. Rept. No. 97-494 (Vol. 1), at 309 (1982), 1982 U.S.C.C.A.N. 781, 1050.

Substances Act, Pub. L. No. 91-513, sec. 202(c), 84 Stat. at 1249 (1970) (codified as amended at 21 U.S.C. sec. 812(c) (2018)). See 21 C.F.R. sec. 1308.11(d)(23) (2019). Consistent with this designation, we have held that the limitations imposed by section 280E are applicable to the ever-increasing number of marijuana businesses operating legally under State law. Olive v. Commissioner, 139 T.C. 19, 38 (2012), aff'd, 792 F.3d 1146 (9th Cir. 2015); CHAMP, 128 T.C. at 182-183.

III.    Petitioner's Eighth Amendment Argument

Petitioner urges us to hold that section 280E, as applied in this case, is unconstitutional under the Eighth Amendment to the Constitution, which provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." To conclude that section 280E violates the Eighth Amendment's Excessive Fines Clause, we must accept that the Eighth Amendment applies to corporations, that section 280E operates as a penalty, and that the penalty in this case is excessive. Because we find that section 280E is not a penalty provision, we will not address petitioner's other arguments.[4]

---

[4]In Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 276 n.22 (1989), the Supreme Court declined to reach the issue of whether the Eighth Amendment applies to corporations. At least some Justices apparently thought it does, but the Supreme Court did not rule on the matter. See id. at 285

(continued...)

The Eighth Amendment's "protection against excessive fines guards against abuses of government's punitive or criminal-law-enforcement authority", and applies to civil and criminal penalties alike. Timbs v. Indiana, ___ U.S. ___, ___, 139 S. Ct. 682, 686 (2019); see Austin v. United States, 509 U.S. 602, 610 (1993) ("'The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law.' * * * Thus, the question is not, as the United States would have it, whether forfeiture * * * is civil or criminal, but rather whether it is punishment." (quoting United States v. Halper, 490 U.S. 435, 447-448 (1989))). A penalty has been described as an "exaction imposed by statute as punishment for an unlawful act." United States v. La Franca, 282 U.S. 568, 572 (1931); see also Kokesh v. SEC, 581 U.S. ___, ___, 137 S. Ct. 1635, 1642 (2017) ("A 'penalty' is a 'punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws.'" (quoting Huntington v. Attrill, 146 U.S. 657, 667 (1892))). Petitioner argues that the aim of section 280E is to punish, rather than tax, and therefore it is a penalty

---

[4](...continued)
(O'Connor, J., concurring in part, and dissenting in part) ("If a corporation is protected by the Due Process Clause * * * it is also protected * * * by the Excessive Fines Clause."). We need not reach that argument today and thus decline to state whether the Eighth Amendment applies to corporations.

that must be limited by the Excessive Fines Clause of the Eighth Amendment. We disagree.

Congress has the power to lay and collect income taxes under Article I, Section 8 of the Constitution. The Sixteenth Amendment grants Congress the power to lay and collect taxes on "incomes, from whatever source derived" without requiring apportionment among the States as required by Article I.[5] The Supreme Court has held that any deductions from gross income are a matter of legislative grace and can be reduced or expanded in accordance with Congress' policy objectives. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see Keeler v. Commissioner, 70 T.C. 279, 284-285 (1978). Under the Sixteenth Amendment, "[t]he power of Congress to tax gross income is unquestionable." Bagnall v. Commissioner, 96 F.2d 956, 957 (9th Cir. 1938), aff'g 35 B.T.A. 1 (1936).

Unlike in other contexts where the Supreme Court has found a financial burden to be a penalty, disallowing a deduction from gross income is not a punishment. Cf. Kokesh, 581 U.S. at ___, 137 S. Ct. at 1643-1644 ("SEC

_____

[5]The Sixteenth Amendment was added in 1913 in response to the Supreme Court's decision in Pollock v. Farmers' Loan & Tr. Co., 158 U.S. 601 (1895), that a tax on income from real and personal property was a direct tax requiring apportionment under Article I of the Constitution. The Sixteenth Amendment removed the apportionment requirement for tax on gross income.

disgorgement * * * bears all the hallmarks of a penalty: It is imposed as a consequence of violating a public law and it is intended to deter, not to compensate."); United States v. Constantine, 296 U.S. 287, 295 (1935) (holding that an excise tax that sought to punish retailers who violated State law was a penalty under the Tenth Amendment). Deductions from gross income do not turn on equitable considerations; rather they are pure acts of legislative grace, the prudence of which is left to Congress. Deputy v. du Pont, 308 U.S. 488, 493 (1940); White v. United States, 305 U.S. 281, 292 (1938); Hokanson v. Commissioner, 730 F.2d 1245, 1250 (9th Cir. 1984), aff'g T.C. Memo. 1982-414; United States v. Akin, 248 F.2d 742, 743 (10th Cir. 1957); Gen. Fin. Co. v. Commissioner, 32 B.T.A. 949, 954 (1935), aff'd, 85 F.2d 846 (3d Cir. 1936). Congress is free to grant, restrict, and deny deductions as it sees fit. J.E. Riley Inv. Co. v. Commissioner, 110 F.2d 655, 658 (9th Cir. 1940), aff'd, 311 U.S. 55 (1940); Barbour Coal Co. v. Commissioner, 74 F.2d 163 (10th Cir. 1934).

Petitioner contends that section 280E is similar to a Federal excise tax targeting violators of State liquor laws that the Supreme Court in Constantine, 296 U.S. at 294, held was a penalty for purposes of the Tenth Amendment, which reserves for the States powers not specifically delegated to the Federal Government by the Constitution. At the time of Constantine, prohibition under

the Eighteenth Amendment had been repealed although some States' laws still made alcohol illegal. The Supreme Court focused on the fact that the excise tax only applied to and punished retailers selling liquor in violation of State law.[6] As there was no Federal interest in punishing State law violators, the tax was unconstitutional under the Tenth Amendment. Id. at 295-296 (holding that the excise tax was "a clear invasion of the police power, inherent in the States, reserved from the grant of powers to the federal government by the Constitution" and improperly intruded on a State's authority to penalize "infractions of the State's criminal code by its own citizens").

In contrast, section 280E is enacted under Congress' unquestionable authority to tax gross income pursuant to the Sixteenth Amendment and is directed at persons who operate a business in violation of State or Federal law. See sec. 280E ("[S]uch trade or business * * * consists of trafficking in controlled substances * * * which is prohibited by Federal law or the law of any State in which such trade or business is conducted."). Section 280E is directly tied to

_____

[6]The Supreme Court explained that the excise tax was in existence during the life of the Eighteenth Amendment and during prohibition Congress had the power "to impose penalties for violations of national prohibitory laws." United States v. Constantine, 296 U.S. 287, 293 (1935). However, when the Supreme Court addressed the constitutionality of the excise tax, the tax only punished violators of State law.

Congress' policy objective to limit and deter trafficking in illegal controlled substances. See CHAMP, 128 T.C. at 182 ("Section 280E and its legislative history express a congressional intent to disallow deductions attributable to a trade or business of trafficking in controlled substances."); see also S. Rept. No. 97-494 (Vol. 1), at 309 (1982), 1982 U.S.C.C.A.N. 781, 1050 ("To allow drug dealers the benefit of business expense deductions * * * is not compelled by the fact that such deductions are allowed to other, legal, enterprises."). It is not simply an attempt by Congress to punish violators of State law with no legitimate Federal objective. Cf. Constantine, 296 U.S. at 295-296.

Petitioner does not cite, and we are not aware of, any case where the disallowance of a deduction was construed a penalty. This is especially telling given that Congress enacted section 280E over 37 years ago in 1982, and over that 37 years it has never been held to be a penalty by any Federal court. See Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, sec. 351(a), 96 Stat. at 640.[7] The overwhelming precedent establishing that deductions from gross

---

[7]Similarly, we are not aware of any cases holding that the Eighth Amendment is implicated in the disallowance of a deduction under sec. 162(c), first enacted in 1958, which disallows deductions for bribes, kickbacks, or other payments paid to government officials and illegal under State or Federal law. See Technical Amendments Act of 1958, Pub. L. No. 85-866, sec. 5(a), 72 Stat. at 1608.

income are a matter purely left to congressional discretion by the Sixteenth Amendment explains why over the last 37 years an Eighth Amendment attack on any section of the Code that limits deductions from gross income has been a nonstarter. In fact, courts have routinely held that the denial of a deduction does not violate the Eighth Amendment. See, e.g., Alpenglow Botanicals, LLC v. United States, 894 F.3d 1187, 1202 (10th Cir. 2018) (holding that denial of deductions under section 280E is not a penalty for purposes of the Eighth Amendment), cert. denied, 139 S. Ct. 2745 (2019); Murillo v. Commissioner, T.C. Memo. 1998-13, 1998 WL 6462, at *3 (holding that denial of a loss deduction for forfeited money does not violate the Eighth Amendment), aff'd, 166 F.3d 1201 (2d Cir. 1998); Bermingham v. Commissioner, T.C. Memo. 1994-69, 1994 WL 52352, at *12 (holding that limitation of an individual retirement account deduction does not violate the Eighth Amendment); King v. United States, 949 F. Supp. 787, 791 (E.D. Wash. 1996) ("[T]he denial of any deduction for the forfeited proceeds from illegal drug trafficking cannot be an excessive fine under the Eighth Amendment."), aff'd, 152 F.3d 1200 (9th Cir. 1998). The Sixteenth Amendment does not accommodate the assertion that the disallowance of a deduction is a penalty. There is simply no way to reconcile the argument that section 280E creates a penalty with the authority of Congress to tax gross income. Therefore,

we hold that section 280E is not a penalty provision and, consequently, the Eighth Amendment's Excessive Fines Clause does not apply.[8]

IV.    Petitioner's Other Arguments

Petitioner makes two additional arguments to attack section 280E.  First, it reasons that section 280E limits only deductions under section 162 and deductions under sections 164 and 167 are allowed notwithstanding section 280E.[9]  Second, it maintains that section 280E does not apply to a legally operated marijuana business because legal operations do not "traffic" in controlled substances.  We will examine and reject each of these arguments in turn.

A.    Sections 164 and 167

Petitioner would have us find that section 280E applies only to section 162 deductions.  According to petitioner, the text of section 280E "tracks" that of section 162, which allows for all ordinary and necessary business expense

---

[8]Our holding today is consistent with the only U.S. Court of Appeals to have considered this issue.  See Alpenglow Botanicals, LLC v. United States, 894 F.3d 1187, 1202 (10th Cir. 2018) (holding that sec. 280E is not a penalty provision).  In this Opinion we address only the application of the Eighth Amendment to sec. 280E; we do not rule out constitutional challenges to Congress' authority to tax gross income in other situations.  See, e.g., Moritz v. Commissioner, 469 F.2d 466, 469 (10th Cir. 1972), rev'g 55 T.C. 113 (1970).

[9]Sec. 164 provides that certain taxes shall be deductible for the tax year in which they are paid or accrued.  Sec. 167 allows for depreciation deductions.

deductions, suggesting that section 280E should apply only to limit section 162 deductions. However, petitioner's argument misses the first line of section 280E: "No deduction or credit shall be allowed". (Emphasis added.) Congress could not have been clearer in drafting this section of the Code.

The broader statutory scheme also supports our conclusion that section 280E means what it says--no deductions under any section shall be allowed for businesses that traffic in a controlled substance. Section 261, in part IX of subchapter B of chapter 1 of the Code, provides that "no deduction shall in any case be allowed in respect of the items specified in this part." Section 280E is in part IX. Similarly, section 161 provides that deductions found in part VI of subchapter B of chapter 1 of the Code are allowed "subject to the exceptions provided in part IX". Part VI provides a comprehensive list of allowable deductions for taxpayers. This list includes section 162 and section 165 deductions, which we have previously disallowed pursuant to section 280E. See CHAMP, 128 T.C. at 180-181 (disallowing section 162 deductions under section 280E); Beck v. Commissioner, T.C. Memo. 2015-149, at *18 (disallowing a section 165 loss deduction under section 280E). As relevant here, part VI also includes sections 164 and 167, two additional sections petitioner believes would allow it a deduction. Clearly, sections 164 and 167 are limited by the exceptions

in part IX, including section 280E. Thus, section 280E precluded petitioner from taking any deductions under sections 164 and 167 that are tied to its medical marijuana dispensary.

B.    Trafficking

Finally, petitioner argues that section 280E applies only to businesses that engage in illegal or disreputable sales of controlled substances. For support, it points to the word "trafficking" in section 280E and contends that this word implies some unsavory or illicit purpose in the business operations. Petitioner has offered us no compelling reason to overrule our caselaw rejecting this argument. See, e.g., Olive v. Commissioner, 139 T.C. at 38; CHAMP, 128 T.C. at 182-183; Canna Care, Inc. v. Commissioner, T.C. Memo. 2015-206, at *9 ("[T]he sale of medical marijuana pursuant to California law constitutes trafficking within the meaning of section 280E."), aff'd, 694 F. App'x 570 (9th Cir. 2017); see also Patients Mut. Assistance Collective Corp. v. Commissioner, 151 T.C. 176, 190 (2018) ("Medical Marijuana is a Schedule I controlled substance, and dispensing it pursuant to * * * [California law] is 'trafficking' within the meaning of section 280E."). Thus, we hold that the use of the word "trafficking" in section 280E encompasses petitioner's medical marijuana dispensary legally operated under California State law.

## V.  Conclusion

Our precedent is unambiguous.  Congress, rather than this Court, is the proper body to redress petitioner's grievances.  We are constrained by the law, and Congress has not carved out an exception in section 280E for businesses that operate lawfully under State law.  Until then, petitioner is not entitled to deduct expenses incurred in the operation of its drug-related business.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued.

Reviewed by the Court.

THORNTON, MARVEL, PARIS, KERRIGAN, BUCH, LAUBER, NEGA, PUGH, and ASHFORD, JJ., agree with this opinion of the Court.

URDA, J., did not participate in the consideration of this opinion.

LAUBER, J., concurring:  I join the opinion of the Court without reservation and write briefly in response to Judge Copeland's partial dissent.  Judge Copeland dissents from the opinion of the Court's conclusion "that section 280E is not a penalty provision."  Copeland op. p. 44.  She adopts as her first premise the Court's acknowledgment that "[s]ection 280E is directly tied to Congress' policy objective to limit and deter trafficking in illegal controlled substances."  See op. Ct. pp. 10-11; Copeland op. p. 48.  She adopts as her second premise a statement in United States v. Bajakajian, 524 U.S. 321 (1998), a case involving asset forfeiture imposed as part of a criminal sentence.  The Court there noted that "[d]eterrence * * * has traditionally been viewed as a goal of punishment."  Id. at 329; see Copeland op. note 3.  From these premises she concludes that the "objective [of section 280E] is clearly in the nature of a penalty" for purposes of scrutiny under the Eighth Amendment.  See Copeland op. p. 48.

With all due respect, the premises do not support the conclusion.  While deterrence is one goal of the criminal justice system, it is also an objective that pervades the Internal Revenue Code (Code).  Hundreds of Code provisions are designed to deter activity that Congress believes to be undesirable.  But this does not make these provisions "in the nature of a penalty" for Eighth Amendment purposes.

Sections 4911 and 4912, for example, impose excise taxes on improper expenditures by public charities. Section 4941 imposes an excise tax on self-dealing by private foundations. Sections 6671 through 6720 impose assessable penalties for such activities as promoting abusive tax shelters (sec. 6700), aiding and abetting understatements of tax (sec. 6701), failing to furnish information about reportable transactions (sec. 6707), and furnishing fraudulent statements to various parties (secs. 6690, 6720). And section 6663(a) imposes a civil fraud penalty equal to 75% of an underpayment of tax due to fraud. These penalties can be extremely large relative to the conduct meant to be deterred. See, e.g., sec. 4941(b)(1) (imposing tax equal to 200% of amount involved); sec. 6700(a) (imposing penalty equal to $1,000 per occurrence or 100% of gross income derived from activity); sec. 6707(b) (imposing penalty of $200,000 or up to 75% of gross income derived from activity).

I am aware of no authority for the proposition that these Code provisions run afoul of the Eighth Amendment. The fact that Congress seeks to deter certain conduct does not make the sanction a "fine" or "punishment" within the meaning of the Eighth Amendment. And the fact that Congress has ordained large monetary sanctions to dissuade people from doing certain things is insufficient, without more, to invoke serious constitutional scrutiny.

Nor does the calculus change because the activity Congress deems undesirable also happens to be illegal. Section 162(c)(1), for example, disallows a deduction for any payment that "constitutes an illegal bribe or kickback." Section 162(f) disallows deductions for fines and other payments made "in relation to the violation of any law." Like section 280E, these provisions are "directly tied to Congress' policy objective to limit and deter" illegal activity. But I am aware of no authority for the proposition that they constitute "punishment" so as to attract constitutional scrutiny under the Eighth Amendment.

As the opinion of the Court correctly observes, the power of Congress to tax gross income is unquestionable, see op. Ct. p. 8 (citing Bagnall v. Commissioner, 96 F.2d 956, 957 (9th Cir. 1938), aff'g 35 B.T.A. 1 (1936)), and deductions from gross income are a matter of legislative grace, see ibid. (citing INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992)). The denial of deductions for costs incurred in selling cannabis, like the denial of deductions for costs incurred in bribing Government officials, directly serves the revenue-raising function of the tax law. Indeed, the denial of deductions of any sort predictably raises revenue by increasing taxpayers' net taxable income. There is no plausible authority for the

proposition that section 280E "punishes" taxpayers, within the meaning of the

Eighth Amendment, by denying deductions for business expenses.

MARVEL, ASHFORD, and GOEKE, JJ., agree with this concurring opinion.

MORRISON, J., concurring:  Petitioner's motion for partial summary judgment seeks a ruling that section 280E violates the Eighth Amendment's prohibition on "excessive fines".  See U.S. Const. amend. VIII.  The opinion of the Court holds that section 280E is not a fine.

I do not advance a view as to whether section 280E is a fine.[1]  Even if section 280E were a fine, petitioner has not shown it would be excessive as applied to petitioner.  Therefore, the Court is correct to deny petitioner's motion for partial summary judgment.

FOLEY, C.J., agrees with this concurring opinion.

---

[1]Nor do I advance a view as to whether the Excessive Fines Clause of the Eighth Amendment applies to corporations.

GUSTAFSON, J., concurring in part and dissenting in part: As to whether we must deny the motion for partial summary judgment filed by petitioner ("NCSBA"), I concur with the majority but for a different reason (i.e., because the motion does not show that there is no genuine dispute as to whether the penalty at issue is "excessive"); but I otherwise dissent from the opinion of the Court because I would hold that section 280E imposes a penalty for purposes of the Eighth Amendment to the Constitution.

Section 280E provides: "No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business * * * consists of trafficking in controlled substances", i.e., drugs illegal under Federal law. (Emphasis added.) NCSBA, a dealer in marijuana (which is a drug illegal under Federal law), contends that this statute violates the Eighth Amendment, which forbids "excessive fines".

The opinion of the Court holds today that section 280E does not violate the Eighth Amendment because section 280E does not impose a fine or penalty but instead simply "disallow[s] a deduction from gross income", see op. Ct. p. 8, and because income tax deductions "do not turn on equitable considerations; rather they are pure acts of legislative grace, the prudence of which is left to Congress" under the Sixteenth Amendment, see id. p. 9. I would hold otherwise.

I.    <u>Because the Sixteenth Amendment gives Congress only the power to tax "incomes", Congress does not have the prerogative to disallow deductions to such an extent that the resulting tax fails to be a tax on "income".</u>

Whatever prerogative Congress has to extend or deny "legislative grace" in the taxation of income is limited by the Constitution.

    A.    <u>Congress has the power to tax "incomes".</u>

Under the Constitution, Congress has the power to tax. <u>See</u> U.S. Const. art. I, sec. 8. That power was conferred subject to certain restrictions, including the requirement that "direct taxes" be apportioned among the States. <u>See</u> <u>id.</u> sec. 2, cl. 3, sec. 9, cl. 4. This apportionment requirement created constitutional problems with an income tax, <u>see</u> <u>Pollock v. Farmers' Loan & Tr. Co.</u>, 158 U.S. 601 (1895), so the Sixteenth Amendment was ratified in 1913 to except a Federal income tax from that apportionment requirement. The Sixteenth Amendment provides: "The Congress shall have power to lay and collect <u>taxes on incomes,</u> from whatever source derived, without apportionment among the several States". (Emphasis added.)

Under the income tax as Congress has enacted it, a taxpayer is entitled to deduct business expenses from his gross income, and any resulting profit is then subject to tax. In 1934 the U.S. Supreme Court first spoke of "legislative grace" to

allow deductions when it stated in <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934):

> The power to tax income like that of the new corporation is plain and extends to the gross income. Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed.

In that case a predecessor corporation had losses that it had never been able to deduct for income tax purposes, and a successor corporation attempted to carry those losses forward to a subsequent year and deduct them in a manner that the statute did not permit; but the Supreme Court upheld the disallowance of the deduction of those losses. Since then the adage that deductions constitute "legislative grace" has become commonplace in tax opinions.[1]

The notion of deductions being "legislative grace", which Congress has the discretion to extend or to deny, is easy to understand when (as in <u>New Colonial Ice Co.</u>) the deduction claimed is for previous tax years' net losses, sustained by a different taxpayer. Congress could grant such a deduction or not, because the

---

[1]I have used the adage in opinions myself, most recently (and for the last time) in <u>Graffia v. Commissioner</u>, T.C. Memo. 2013-211, at *25 ("deductions are a matter of legislative grace"), <u>aff'd</u>, 580 F. App'x 474 (7th Cir. 2014). If this "legislative grace" adage <u>denotes</u> something true, it unfortunately seems to <u>connote</u> that the Government exercises largesse when it lets the taxpayer keep some of his income; and the opinion of the Court illustrates the way in which the adage can be invoked to distort or exaggerate Congress's discretion under the Sixteenth Amendment.

absence of a deduction for the previous year's net loss of the predecessor corporation was not an expense that was incurred in the successor corporation's production of revenues for the current year. The absence of that loss carryover deduction did not affect the character of the current tax as a tax on the taxpayer's "income", for purposes of the Sixteenth Amendment.[2] "Legislative grace" is similarly present when the deduction at issue has nothing to do with the production of taxable income--such as a deduction for a charitable contribution under section 170(a). In such an instance, it is evident that Congress may grant such a deduction or not. If Congress were to impose an income tax unreduced by any deduction for charitable giving, then the absence of a charitable contribution deduction would not affect the character of the tax as a tax on "incomes", for purposes of the Sixteenth Amendment. Rather, the donor would have been taxed

---

[2]The Court made this point explicit: "The statutes pertaining to the determination of taxable income have proceeded generally on the principle that there shall be a computation of gains and losses on the basis of a distinct accounting for each taxable year; and only in exceptional situations, clearly defined, has there been provision for an allowance for losses suffered in an earlier year." New Colonial Ice Co. v. Commissioner, 292 U.S. 435, 440 (1934) (emphasis added). It is such "exceptional situations" in which Congress may grant or deny "legislative grace". New Colonial Ice Co. should not be read to confer on Congress the prerogative to deny all ordinary deductions when it purports to tax "income".

on his income, and any contribution he made to charity would have come from his post-tax income.

B.    "Income" must take account of basis and cost of goods sold.

Very different would be an attempt by Congress to tax gross proceeds from the sale of a capital asset, without allowing a taxpayer to account for his "basis" in the property in calculating his taxable gain.  A taxpayer who had bought Blackacre for $1,000 and then sold it for $900 would have received no gain but rather would have suffered a loss of $100.  See secs. 1001(a), (c), 1011, 1012.  If Congress were to attempt to use its power under the Sixteenth Amendment to tax his gross proceeds of $900 as if it were "income", the attempt would fail.[3]

Likewise, a congressional attempt to tax the gross receipts of a business engaged in sales should fail.  A taxpayer who purchased 100 widgets at a cost of $10 each and sold them at a price of $9 each would have gross receipts or sales of $900, which after being reduced by the "cost of goods sold" ("COGS") of $1,000

_____

[3]See Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185 (1918) ("Whatever difficulty there may be about a precise and scientific definition of 'income,' it imports, as used here, something entirely distinct from principal or capital either as a subject of taxation or as a measure of the tax; conveying rather the idea of gain or increase arising from corporate activities.  * * * 'Income may be defined as the gain derived from capital, from labor, or from both combined'" (emphasis added) (quoting Stratton's Indep., Ltd. v. Howbert, 231 U.S. 399, 415 (1913))).  But see Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 n.6 (1995) (distinguishing Stratton's Indep., Ltd. and Doyle), discussed below in part I.C.

(analogous to basis in the Blackacre example) would yield a loss of $100. Given that obvious loss, Congress could not tax the gross receipts of $900 as if it were "income". Rather, as the Court of Appeals for the Tenth Circuit has explained: "To ensure taxation of income rather than sales, the 'cost of goods sold' is a mandatory exclusion from the calculation of a taxpayer's gross income." Alpenglow Botanicals, LLC v. United States, 894 F.3d 1187, 1199 (10th Cir. 2018), aff'g No. 16-CV-00258-RM-CBS, 2016 WL 7856477 (D. Colo. Dec. 1, 2016). That is, under the Sixteenth Amendment it is "mandatory" to allow a reduction for COGS, since we do not know whether a taxpayer-seller had any "income" at all until we know whether the price he obtained for the item he sold exceeded the cost he had incurred to produce that item.

C.     "Income" is gain.

The taxation of "income" must take account of the "basis" in a capital asset and of the COGS of inventory--not merely as an exercise of "legislative grace" but as mandatory under the Sixteenth Amendment of the Constitution. Why?--

> A proper regard for * * * [the] genesis [of the Sixteenth Amendment], as well as its very clear language, requires also that this amendment shall not be extended by loose construction * * *.

> [I]t becomes essential to distinguish between what is and is not "income," as the term is there used, and to apply the distinction, as

cases arise, according to truth and substance, without regard to form. * * *

For the present purpose we require only a clear definition of the term "income," as used in common speech, in order to determine its meaning in the amendment * * *.

After examining dictionaries in common use * * *, we find little to add to the succinct definition * * *, "Income may be defined as the gain derived from capital, from labor, or from both combined" * * *.

Eisner v. Macomber, 252 U.S. 189, 206-207 (1920) (emphasis added) (quoting

Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185 (1918)).

Thus, these "mandatory exclusion[s]" of basis and COGS, which the Court

of Appeals acknowledged in Alpenglow, arise not from any express constitutional

rule about COGS or basis but rather from the very meaning of the "incomes" that

the Sixteenth Amendment permits Congress to tax. "[T]he essential matter * * *

[is] a gain, a profit". Eisner v. Macomber, 252 U.S. at 207; see also Doyle,

247 U.S. at 184-189 ("'income' * * * convey[s] * * * the idea of gain or increase

arising from corporate activities"). Congress taxes something other than a

taxpayer's "income" when it taxes gross receipts without accounting for basis or

COGS--and, I would hold, when it taxes gross receipts without accounting for the

ordinary and necessary expenses that are incurred in the course of business and

must be paid before one can be said to have <u>gain</u>.[4]

The Court of Appeals explicitly so held in <u>Davis v. United States</u>, 87 F.2d

323, 324-325 (2d Cir. 1937):

> It will be well to note at the start that our scheme of income taxation provides for a method of computation whereby all receipts during the taxable period which are defined as gross income are gathered together and from the total are taken <u>certain necessary items</u> like cost of property sold; <u>ordinary and necessary expenses</u> incurred in getting the so-called gross income; depreciation, depletion, and the like in order to reduce the amount computed as gross income to <u>what is in fact income</u> under the rule of <u>Eisner v. Macomber</u>, 252 U.S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A.L.R. 1570, and so lawfully taxable as such. In this way true income is ascertained by <u>taking from gross income as defined that which is necessary as a matter of actual fact in order to determine what as a matter of law may be taxed as income</u>. While such subtractions are called deductions, as indeed they are, they are not to be confused with deductions of another sort like personal exemptions; deductions for taxes paid; losses sustained in unrelated transactions and other like privileges which Congress has seen fit to accord to income taxpayers under classifications it has established. <u>While the first kind of deductions are inherently necessary as a matter of computation to arrive at income, the second may be allowed or not in the sound discretion of Congress</u> * * *. Such deductions as distinguished from the first kind are allowed by Congress wholly as a matter of grace. <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 54 S. Ct. 788, 78 L. Ed. 1348; <u>Van Vleck v.

---

[4]If "'income' may be defined as <u>the gain</u> derived from capital, <u>from labor</u>, or from both combined", <u>Stratton's Indep., Ltd. v. Howbert</u>, 231 U.S. at 415 (emphasis added), then a business's cost of labor should be no less deductible than its cost to acquire items it sells.

Commissioner, 80 F. (2d) 217 (C.C.A. 2); Gillette v. Commissioner, 76 F.(2d) 6 (C.C.A. 2). * * * [Emphasis added.]

The District Court in Alpenglow Botanicals, 2016 WL 7856477, at *5, set Davis aside by stating:

> [T]he Second Circuit's explanation of taxable income is dicta, * * * and the Supreme Court itself has placed its decision in Eisner into context. Notably, in C.I.R. v. Glenshaw Glass Co., 348 U.S. 426, 430-431, 75 S. Ct. 473 (1955), the Supreme Court explained that the characterization of income in Eisner served a useful purpose for distinguishing gain from capital, "[b]ut it was not meant to provide a touchstone to all future gross income questions." * * *

The issue in Eisner v. Macomber was the taxability of a stock dividend (raising questions admittedly different from those in this case and in Alpenglow), and the Supreme Court did indeed observe in Glenshaw Glass, 348 U.S. at 431, that the definition in Eisner v. Macomber "was not meant to provide a touchstone to all future gross income questions."

However, even after Glenshaw Glass, one can still say: "Implicit in this construction [in Eisner v. Macomber of "income" as it is used in the Sixteenth Amendment] is the concept that gain is an indispensable ingredient of 'income,' and it is this concept which provides the standard by which we must determine whether the tax * * * is a tax on 'income' within the meaning of the 16th amendment." Penn Mut. Indem. Co. v. Commissioner, 32 T.C. 653, 680

(1959) (Train, J., dissenting; emphasis in original), aff'd, 277 F.2d 16 (3d Cir. 1960). Again, Eisner v. Macomber, 252 U.S. at 207, held that "the essential matter * * * [is] a gain, a profit", and this "essential" point is hardly dictum.

D.     Section 280E results in a tax on something other than "income".

To state the generality that business deductions are mandatory under the Sixteenth Amendment is not to specify which particular deductions may be mandatory. By simply authorizing a tax on "incomes", the Constitution manifestly granted Congress wide latitude in implementing its authority and defining "incomes". Congress has had to make decisions about whether and how deductions will be allowed, disallowed, or limited for various business expenses, and "it is well settled * * * that great leeway is given to Congress." Cottrell v. Commissioner, T.C. Memo. 1970-218, 29 T.C.M. (CCH) 956, 957 (1970) (citing Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930)). Consequently, a constitutional challenge to the statutory disallowance of a particular business deduction will seldom succeed.[5]

---

[5]A different sort of disallowance was at issue in Nat'l Life Ins. Co. v. United States, 277 U.S. 508 (1928), discussed below in note 6. Besides Nat'l Life Ins. Co., I am not aware of any instance in which a constitutional challenge to the disallowance of a business deduction has succeeded.

But section 280E does not prompt a question as to the constitutionality of "disallowing a deduction". See op. Ct. p. 8 (emphasis added). Congress does not by that statute simply deny "a deduction", as it does, for example, in section 162(f) when it disallows a deduction for the payment of fines. Rather, section 280E provides: "No deduction or credit shall be allowed for any amount paid or incurred during the taxable year". (Emphasis added.) Where section 280E applies, it allows "no deduction"; it disallows all deductions. The result of section 280E is that the determination of the supposed "income tax" liability of a taxpayer trafficking in illegal drugs bypasses altogether any inquiry as to his gain.

This point is illustrated by expanding upon the example of the widget seller. Suppose he purchased 100 widgets at a cost of $6 per widget (instead of $10, as above), yielding COGS of $600, and suppose that for his business he leased a retail space for $200 and paid wages of $200 to employees, yielding additional expenses of $400, so that his out-of-pocket expenditures for COGS ($600) and additional expenses ($400) totaled $1,000. If he then sold the 100 widgets at a price of $9 each, he would have gross receipts of $900, which would, after being reduced by his total costs of $1,000 (the sum of COGS and total expenses), yield a loss of $100. No one would propose that this seller had any gain. And if his product had been not widgets costing $600 but illegal drugs costing the same

amount, he would have the same negative outcome--a loss of $100. But despite this obvious loss, section 280E would disallow any deduction for his rent and wage expenses totaling $400, leaving him with gross receipts of $900, less COGS of $600, yielding a supposed taxable "income" of $300--despite his having incurred not gain but loss. Section 280E would fabricate gain where there was none and would impose a tax based on artificial income.

I would hold that this wholesale disallowance of all deductions transforms the ostensible income tax into something that is not an income tax at all, but rather a tax on an amount greater than a taxpayer's "income" within the meaning of the Sixteenth Amendment. Accordingly, I would hold that the Sixteenth Amendment does not permit Congress to impose such a tax and that section 280E is therefore unconstitutional.

II. Even if Congress has an otherwise unrestricted power to withhold its "legislative grace" and disallow deductions, it cannot do so in a manner that violates other constitutional limitations, such as the Eighth Amendment.

A. A broad reading of Congress's income-taxing power under the Sixteenth Amendment does not avoid the Eighth Amendment issue.

Assuming, however, that deductions are indeed purely matters of "legislative grace" to the full extent that the opinion of the Court concludes, that proposition does not end the constitutional analysis as the opinion seems to

suggest. "We must not forget that the right to select the measure and objects of taxation devolves upon the Congress * * *, and such selections are valid <u>unless constitutional limitations are overstepped</u>." <u>Flint v. Stone Tracy Co.</u>, 220 U.S. 107, 167 (1911) (emphasis added).

Even if no taxpayer has a constitutional right to deductions for "ordinary and necessary" business expenses, and even if Congress can therefore broadly disallow deductions without exceeding its authority under the Sixteenth Amendment, Congress's authority is still restrained if that disallowance violates any other constitutional provision.[6] Under the broadest possible notion of Congress's prerogative to extend "legislative grace" in tax matters, Congress could not (for example) allow tax exemption to organizations of one religion but

---

[6]<u>See</u> <u>Planned Parenthood of Greater Ohio v. Hodges</u>, 917 F.3d 908, 911 (6th Cir. 2019) ("The government may not deny an individual a benefit, <u>even one an individual has no entitlement to</u>, on a basis that infringes his constitutional rights" (emphasis added)); <u>see also</u> <u>Nat'l Life Ins. Co.</u>, 277 U.S. at 520 ("The suggestion that, as Congress may or may not grant deductions from gross income at pleasure, it can deny to one and give to another, is specious, but unsound"). In <u>Nat'l Life Ins. Co.</u> a life insurance company successfully challenged the special regime for taxation of such companies because the statute effectively disallowed the deduction of--and thus imposed tax on--interest from tax-exempt bonds, which the Court evidently held unconstitutional with little elaboration (a holding criticized in a dissent by Justice Brandeis). That ultimate holding is difficult, but the proposition quoted above surely remains valid.

deny it to organizations of another,[7] nor allow a deduction to an individual of one sex but disallow it to an individual of the other.[8] Even if under the Sixteenth Amendment Congress is otherwise "free to grant, restrict, and deny deductions as it sees fit", see op. Ct. p. 9, it is certainly not free to do so in violation of the First Amendment or the Fifth Amendment. If a taxpayer complains that the disallowance of a deduction violates his First Amendment or Fifth Amendment rights, it would widely miss the mark to dismiss his complaint with the maxim that deductions are a matter of "legislative grace" under the Sixteenth Amendment. Even if deductions are a matter of legislative grace, the disallowance of deductions must pass muster not only under the Sixteenth Amendment but also under all other constitutional standards.

---

[7]See, e.g., Golden Rule Church Ass'n v. Commissioner, 41 T.C. 719, 729 (1964) ("Although tax benefits * * * may be matters of legislative grace * * * nevertheless, a denial of such benefits granted to others of essentially the same class may well rise to the level of an unconstitutional discrimination").

[8]"It is true that deductions are a matter of legislative grace and that they must be authorized by a clear provision under which the taxpayer must qualify. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 * * * [(1934)]; Harper Oil Co. v. United States, 425 F.2d 1335, 1342 (10th Cir. [1970]). However, if the Congress determines to grant deductions of a general type, a denial of them to a particular class may not be based on an invidious discrimination." Moritz v. Commissioner, 469 F.2d 466, 469 (10th Cir. 1972), rev'g 55 T.C. 113 (1970).

In the same way, Congress is <u>not</u> free, in implementing the Sixteenth Amendment, to deny deductions in a manner that violates the Eighth Amendment. Petitioner's "excessive fines" argument is not foreclosed by showing that the <u>Sixteenth</u> Amendment permits the disallowance effected by section 280E. We must determine separately whether section 280E violates the <u>Eighth</u> Amendment.

B.      <u>The Eighth Amendment's prohibition of "excessive fines" is a fundamental constitutional protection of liberty.</u>

The Eighth Amendment, taken almost verbatim from the 1689 English Bill of Rights, <u>see</u> <u>Timbs v. Indiana</u>, 586 U.S. ___, ___, 139 S. Ct. 682, 688 (2019), provides: "Excessive bail shall not be required, <u>nor excessive fines imposed</u>, nor cruel and unusual punishments inflicted." (Emphasis added.) The Supreme Court has had very recent occasion to affirm that--

> the protection [of the Eight Amendment] against excessive fines guards against abuses of government's punitive or criminal law-enforcement authority. This safeguard, we hold, is "fundamental to our scheme of ordered liberty," with "dee[p] root[s] in [our] history and tradition."

<u>Id.</u> at ___, 139 S. Ct. at 686-687 (first alteration added) (quoting <u>McDonald v. Chicago</u>, 561 U.S. 742, 767 (2010)). In a concurring opinion, Justice Thomas elaborated:

[D]uring Virginia's ratifying convention, Patrick Henry pointed to Virginia's own prohibition on excessive fines and said that it would "depart from the genius of your country" for the Federal Constitution to omit a similar prohibition. Debate on Virginia Convention (June 14, 1788), in 3 Debates on the Federal Constitution 447 (J. Elliot 2d ed. 1854). Henry continued: "[W]hen we come to punishments, no latitude ought to be left, nor dependence put on the virtue of representatives" to "define punishments without this control." Ibid.

    \*     \*     \*     \*     \*     \*     \*

Justice Story \* \* \* explained that the Eighth Amendment was "adopted, as an admonition to all departments of the national government, to warn them against such violent proceedings, as had taken place in England in the arbitrary reigns of some of the Stuarts," when "[e]normous fines and amercements were . . . sometimes imposed." 3 J. Story, Commentaries on the Constitution of the United States § 1896, pp. 750-751 (1833). Story included the prohibition on excessive fines as a right, along with the "right to bear arms" and others protected by the Bill of Rights, that "operates, as a qualification upon powers, actually granted by the people to the government"; without such a "restrict[ion]," the government's "exercise or abuse" of its power could be "dangerous to the people." Id., § 1858, at 718-719.

    \*     \*     \*     \*     \*     \*     \*

The right against excessive fines traces its lineage back in English law nearly a millennium, and from the founding of our country, it has been consistently recognized as a core right worthy of constitutional protection. \* \* \*

Id. at ___, 139 S. Ct. at 696, 698 (Thomas, J. concurring in the judgment).

Wherever excessive fines are implicated, this protection should be vindicated.

III.    Section 280E imposes a "fine" under the Eighth Amendment.

Even if deductions are indeed wholly matters of "legislative grace", I would hold that the application of section 280E results in the imposition of a "fine" for purposes of the Eighth Amendment's excessive fines clause.

A.    A penalty is an exaction imposed as punishment for an unlawful act.

"In distinguishing penalties from taxes, this Court has explained that 'if the concept of penalty means anything, it means punishment for an unlawful act or omission.'" Nat'l Fed'n of Indep. Bus. v. Sebelius ("NFIB"), 567 U.S. 519, 567 (2012) (quoting United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 224 (1996)) (citing United States v. La Franca, 282 U.S. 568, 572 (1931) ("a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act")).  An Eighth Amendment "fine" or penalty may be criminal or civil.  Austin v. United States, 509 U.S. 602, 609-610 (1993). "[T]he Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government."  Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 268 (1989).

Section 280E is plainly directed toward the unlawful act of "trafficking in controlled substances"; it fundamentally alters the normal income tax liability by

disallowing all deductions;[9] the increased "income tax" liability that results from that disallowance is imposed and collected by the Government; and that liability is plainly intended, at least in part,[10] to punish and deter[11] that unlawful activity. Nonetheless, both the opinion of the Court and the Commissioner's brief essentially begin and end with the contention that, because the resulting liability is within Congress's Sixteenth Amendment power to impose as an income tax and is called an "income tax", it cannot be a fine or penalty.  I believe that contention is mistaken.

---

[9]Cf. Dep't of Revenue of Mont. v. Kurth Ranch, 511 U.S. 767, 783 (1994) ("This [State] tax [on marijuana], imposed on criminals and no others, departs so far from normal revenue laws as to become a form of punishment.  Taken as a whole, this drug tax is * * * too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment" (emphasis added)).

[10]In deciding in Austin whether civil asset forfeitures had the purpose to punish, the Supreme Court acknowledged that forfeitures often "serve[d] more than one purpose" but that the Court needed only to determine whether "it can only be explained as serving in part to punish."  See Austin v. United States, 509 U.S. 602, 610-622 (1995) (emphasis added).

[11]"Deterrence * * * has traditionally been viewed as a goal of punishment". United States v. Bajakajian, 524 U.S. 321, 329 (1998).  The majority admits that "[s]ection 280E is directly tied to Congress' policy objective to limit and deter trafficking in illegal controlled substances", see op. Ct. pp. 10-11; that objective is clearly penal.  Therefore, the purpose of section 280E is punitive under the first prong of the requisite Eighth Amendment analysis.  See supra part II.

B.     An exaction labeled as an "income tax" may still be a fine.

An exaction by the Government may be a "fine" or "penalty" even if it is not labeled as such.[12] The "excessive fines" prohibition of the Eighth Amendment would be toothless indeed if Congress could evade it by the simple device of imposing its fine as an "income tax". The opinion of the Court asserts that "disallowing a deduction from gross income is not a punishment", see op. Ct. p. 8, but I do not see why this is so. I note first that, again, this case involves not the disallowance of "a deduction"[13] but instead the wholesale disallowance of all deductions. Second, the punishment visited by section 280E is not the disallowance of deductions per se but rather the increased tax liability--uniquely imposed on drug traffickers--that results from that disallowance.

Although "taxes that seek to influence conduct are nothing new", NFIB, 567 U.S. at 567, "there comes a time in the extension of the penalizing features of the so-called tax when * * * [the tax] loses its character as such and becomes a mere

---

[12]See United States v. Constantine, 296 U.S. 287, 294 (1935) ("If in reality [it is] a penalty[,] it cannot be converted into a tax by so naming it, and we must ascribe to it the character disclosed by its purpose and operation, regardless of name" (fn. ref. omitted)).

[13]See also op. Ct. p. 11 ("Petitioner does not cite, and we are not aware of, any case where the disallowance of a deduction was construed a penalty" (emphasis added)).

penalty, with the characteristics of regulation and punishment", A. Magnano Co. v. Hamilton, 292 U.S. 40, 46 (1934); see also Bailey v. Drexel Furniture Co., 259 U.S. 20, 38 (1922) (holding that an exaction, although labeled a tax, was not in fact authorized by Congress's taxing power).

C.      The analysis in Alpenglow Botanicals was inadequate.

The opinion of the Court observes that its proposed holding "is consistent with the only U.S. Court of Appeals to have considered this issue"--i.e., Alpenglow Botanicals, 894 F.3d at 1202. See op. Ct. note 8. But I submit that Alpenglow Botanicals is not persuasive because the Court of Appeals for the Tenth Circuit never performed an Eighth Amendment constitutional analysis suited to that case but relied instead on an inapposite authority in reaching its conclusion that section 280E does not impose a penalty. For that proposition, the Court of Appeals' opinion in Alpenglow Botanicals relied on its prior opinion in Green Solution Retail, Inc. v. United States, 855 F.3d 1111 (10th Cir. 2017), but that reliance was misplaced: In Green Solution Retail, Inc., 855 F.3d at 1120-1121, the Court of Appeals had decided only a question of statutory construction--i.e., whether section 280E is a "penalty" for purposes of the prohibition in the Anti-Injunction Act ("AIA"), sec. 7421(a), of "restraining the

assessment or collection of any <u>tax</u>"--and not the constitutional question of whether section 280E imposes a penalty for purposes of the Eighth Amendment.

As the Supreme Court explained in <u>NFIB</u>, 567 U.S. at 564: "It is up to Congress whether to apply the Anti-Injunction Act to any particular statute, so it makes sense to be guided by Congress's choice of label on that question"; and the Court held that "that label [of penalty] is fatal to the application of the Anti-Injunction Act". "<u>That choice does not, however, control</u> whether an exaction is within Congress's constitutional power to tax." <u>Id.</u> (emphasis added). That is to say, an analysis more deferential to Congress is prescribed by the Supreme Court for the statutory construction issue of determining whether the AIA applies (i.e., the question present in <u>Green Solution Retail, Inc.</u>); but a functional analysis less deferential to Congress is appropriate for determining the constitutional question of whether an exaction is within Congress's power to tax--i.e., the question presented in <u>NFIB</u>, in <u>Constantine</u>, in <u>Alpenglow</u>, and in this case. <u>See</u> <u>NFIB</u>, 567 U.S. at 561-566 (disregarding the "penalty" designation in the Affordable Care Act and examining the penalty's substance and effect using a functional approach).

IV.  Conclusion

I would hold that the Sixteenth Amendment does not give Congress the unrestricted power to impose, as a tax on "incomes", the liability arising from the disallowances of section 280E.  I would hold that section 280E imposes a "fine" or penalty for purposes of the Eighth Amendment and that further proceedings are needed here to address two questions:  (1) whether the protections of the Eighth Amendment extend to corporate taxpayers[14] and (2) whether the penalty resulting from section 280E is "excessive"--questions not reached in the opinion of the Court.

GALE, J., agrees with parts II and III of this concurring in part and dissenting in part opinion.

COPELAND, J., agrees with this concurring in part and dissenting in part opinion.

---

[14]The Supreme Court has reserved ruling on the question whether a corporation is entitled to Eighth Amendment protections.  See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 276 n.22 (1989).

COPELAND, J., concurring in part and dissenting in part: I join in Judge Gustafson's concurrence and dissent but expand upon his parts II and III and highlight the unique aspects of section 280E for further constitutional inquiry. Even if section 280E is characterized as a penalty provision, petitioner in its partial summary judgment motion has not set forth evidence of excessiveness. Thus, I concur in the result of the opinion of the Court; I would deny the partial summary judgment motion on that ground. However, I dissent from the opinion of the Court's conclusion that section 280E is not a penalty provision.

One of the main questions petitioner presents to the Court in its partial summary judgment motion is whether section 280E is a penalty provision and is excessive in violation of the Excessive Fines Clause of the Eighth Amendment to the Constitution. The opinion of the Court holds that section 280E is not a penalty provision and therefore does not violate the Eighth Amendment's prohibition on excessive fines. See op. Ct. p. 13. The Court reaches that conclusion and avoids performing a constitutional analysis by relying on the oft-quoted maxim that deductions "are a matter of legislative grace". See op. Ct. p. 8 (citing INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992), and New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934)). As a general matter, I agree that Congress

is free to grant, restrict, and deny deductions, but those actions are still subject to constitutional limitations.

The Excessive Fines Clause of the Eighth Amendment limits the Government's power to extract excessive fines from citizens. U.S. Const. amend. VIII. Fines for this purpose are payments "to a sovereign as punishment for some offense." United States v. Bajakajian, 524 U.S. 321, 327 (1998) (quoting Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265 (1989); see also Austin v. United States, 509 U.S. 602, 609-610 (1993) (holding Eighth Amendment Excessive Fines Clause applies in civil and criminal cases). Consequently, courts determine whether a law is unconstitutional under the Excessive Fines Clause by conducting a two-prong analysis. See Bajakajian, 524 U.S. at 334. First, courts determine whether the exaction at issue is a punishment (or a penalty[1]). Austin, 509 U.S. at 609-610; see also Thomas v. Commissioner, T.C. Memo. 1994-128, 1994 WL 100605, at *5, aff'd, 62 F.3d 97 (4th Cir. 1995). If it is not, the analysis ends there. See, e.g., Thomas v. Commissioner, 1994 WL 100605, at *5-6. However, if the court finds that the exaction is punitive (thus a

---

[1]See op. Ct. p. 7 (citing Kokesh v. SEC, 581 U.S. ___, ___, 137 S. Ct. 1635, 1642 (2017) ("A 'penalty' is a 'punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws.'" (quoting Huntington v. Attrill, 146 U.S. 657, 667 (1892)).

fine),[2] then it is unconstitutional only if the fine is excessive. Bajakajian, 524 U.S. at 334.

Courts have repeatedly held that the substance of the exaction, rather than the label given to an item, is controlling. For example, this Court has found exactions are penalties if they have the "intention or effect of punishing the taxpayer". Ianniello v. Commissioner, 98 T.C. 165, 177 (1992) (emphasis added) (reasoning deficiencies and additions to tax are not punitive (thus not fines) for Eighth Amendment purposes because they compensate "the United States for lost revenues and costs incurred in investigating petitioners' fraud", id. at 187); see

---

[2]We note that caselaw supports the view that tax can be remedial (revenue raising) while seeking to deter noncompliance with tax laws. The Internal Revenue Code (Code) provisions considered by courts, such as additions to tax for civil fraud, are remedial because they aim to protect the revenue and reimburse the Government for the expense of investigating fraud. See Louis v. Commissioner, 170 F.3d 1232, 1236 (9th Cir. 1999), aff'g T.C. Memo. 1996-257. Similarly, the Court of Appeals for the Ninth Circuit held that penalties for negligence and substantial understatements of income tax did not violate the Eighth Amendment because the taxpayer did not establish that they were "penal sanctions unrelated to the government's fundamental interest in raising revenue"; rather, the exactions "are purely revenue raising because they serve only to deter noncompliance with tax laws by imposing a financial risk on those who fail to do so." Little v. Commissioner, 106 F.3d 1445, 1454-1455 (9th Cir. 1997) (emphasis added), aff'g T.C. Memo. 1993-281. Such Code provisions encourage proper reporting whereas sec. 280E does the opposite: It punishes reporting by restricting otherwise allowable noncriminal business deductions for expenses such as wages, rent, insurance and advertising. Further, sec. 280E seeks to punish violators of controlled substance laws, a purpose "unrelated to the government's fundamental interest in raising revenue." Id. at 1455.

also Murillo v. Commissioner, T.C. Memo. 1998-13, 1998 WL 6462, at *3 ("The imposition of liability for a Federal income tax deficiency has a remedial intent and is not a punishment."), aff'd, 166 F.3d 1201 (2d Cir. 1998). Further, the Supreme Court, in evaluating the constitutionality of other laws under different grounds, has reasoned that "there comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty, with the characteristics of regulation and punishment." Bailey v. Drexel Furniture Co., 259 U.S. 20, 37 (1922) (holding an exaction for the employment of minor children, which was labeled a tax, functioned as a penalty); see also Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 566 (2012) (holding that labeling the healthcare shared responsibility payment under Affordable Care Act a "penalty" was not controlling for it "may for constitutional purposes be considered a tax"); Dep't of Revenue v. Kurth Ranch, 511 U.S. 767, 783 (1994) ("This tax, imposed on criminals and no others, departs so far from normal revenue laws as to become a form of punishment."); United States v. Constantine, 296 U.S. 287, 294 (1935) ("If [an exaction is] in reality a penalty it cannot be converted into a tax by so naming it, * * * and we must ascribe to it the character disclosed by its purpose and operation, regardless of name." (Fn. ref. omitted.)).

Section 280E is punitive and requires further analysis under the Eighth Amendment on two separate grounds.  First, even if section 280E was not written as a penalty provision, it operates as such.  It attacks an entire industry (in this case, cannabis businesses) and sweeps so broadly as to deny every deduction the Code would otherwise allow, rather than specify a narrow range of expenses.  Second, as Judge Gustafson explains in his partial dissent, Congress intended section 280E to deter the sale of controlled substances to penalize the drug trade, as the legislative history explicitly states.  See Gustafson op. pp. 38-39.  The opinion of the Court's decision to label section 280E "not a penalty provision", see op. Ct. p. 13, bypasses further inquiry into the Eighth Amendment's prohibition on excessive fines.  This is not supportable.  The opinion of the Court admits:  "Section 280E is directly tied to Congress' policy objective to limit and deter trafficking in illegal controlled substances", see op. Ct. pp. 10-11; that objective is clearly in the nature of a penalty.[3]  Therefore, the effect and purpose of

---

[3]United States v. Bajakajian, 524 U.S. 321, 329 (1998) (explaining that "[d]eterrence, however, has traditionally been viewed as a goal of punishment" in the context of a criminal forfeiture law).  Notably, the forfeiture law at issue in Bajakajian and the Controlled Substances Act, Pub. L. No. 91-153, sec. 202, 84 Stat. at 1247 (1970) (codified as amended at 21 U.S.C. sec. 812 (2018)), cross-referenced in sec. 280E impose exactions for violations of criminal laws, which is inapposite to Congress' remedial goal to deter noncompliance in other provisions of the Code in their effort to protect the revenue.  Moreover, the Eighth

(continued...)

section 280E is punitive and requires analysis of "excessiveness" under the Eighth Amendment.  See Gustafson op. part II.

I do not advance a view as to whether the Excessive Fines Clause of the Eighth Amendment applies to corporations.  See Gustafson op. p. 43 and note 14 ("The Supreme Court has reserved ruling on the question whether a corporation is entitled to Eighth Amendment protections.  See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 276 n.22 (1989).").  I do, however, reject the opinion of the Court's view that section 280E "is not a penalty".  See op. Ct. pp. 6, 13.

GALE and GUSTAFSON, JJ., agree with this concurring in part and dissenting in part opinion.

---

[3](...continued)
Amendment is a two-prong analysis that is triggered because it was raised by the parties (not solely because controlled substances are illegal), and I focus on only the punitive prong.